J. H. WORLEY BY HIS NEXT FRIEND v. SOUTHERN RAILWAY COMPANY.

(Filed 24 May, 1915.)

Railroads—"Safety Appliance Act"—Power Brakes—Local Switching—Interpretation of Statutes.

The requirements of the Federal "Safety Appliance Act," that railroads in the operation of interstate trains must be equipped with a certain kind of brake, do not apply to the local switching of cars on the company's switch yard, and the failure of the company to provide them in such instances affords no evidence of actionable negligence in an action to recover damages. Instances where interstate trains are being carried by switching crews from one location to another a few miles distant, its final destination, distinguished.

APPEAL by plaintiff from *Cline, J.,* at October Term, 1914, of BUN-COMBE.

Civil action, tried upon the ordinary issues of negligence, contributory negligence, assumption of risk, and damage. His Honor directed the jury upon all the evidence to answer the first issue as to negligence "No," and rendered judgment dismissing the action. The plaintiff excepted and appealed.

*Zeb F. Curtis, A. H. Johnston, V. S. Lusk for plaintiff.*
*Martin, Rollins & Wright for defendant.*

BROWN, J. This action is brought by the plaintiff to recover damages for personal injury, received in operating a hand brake upon a car of the defendant while engaged in switching operations in the defendant's switching yards at Asheville.

The evidence tends to prove that it was the plaintiff's duty to get on top of the cars and apply the hand brakes as the cars descended from an elevated point in the railroad switching yards called the "Big Hump"; that plaintiff got aboard the third car from the rear for the purpose of

applying the hand brakes, and while using the usual brake-stick for that purpose, and applying the brakes in the usual way, the brake-stick slipped out of the brake wheel, causing the plaintiff to fall to the ground, in consequence of which he was injured.

The only ground of negligence alleged is the failure of the defendant to have coupled up and in use on these cars, while engaged in switching movements on the switching yards in Asheville, power brakes, or brakes under the control of the engineer on 85 per cent of the cars in use.

It is admitted that the defendant is engaged in interstate commerce and that at the time of the injury the plaintiff was employed in interstate commerce, and that this action is brought under the "Employers' Liability Act." The only question presented is whether or not the Federal statute known as the "Safety Appliance Act" applies to switching operations upon the switching yards of a railroad corporation.

The act provides: "It shall be unlawful for any common carrier engaged in interstate commerce by railroads to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliance for operating the train brake system or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose." Thornton (2 Ed.), page 452.

We agree with the judge below, that the provisions of this act do not extend to switching operations in the switching yards and terminals of railroad companies. This is the view taken by the Federal courts, and it seems to have been regarded by the Government that to extend the use of automatic brakes for switching operations is impracticable.

In the case of the *Erie Railroad Co. v. U. S.,* 197 Fed., 287, this question was considered by the Circuit Court of Appeals, Third Circuit. In the opinion it is said: "It is conceded by the Government that this act does not apply to, or at least has never been enforced as to switching operations. Manifestly, such is the reasonable construction of the act." Again: "That it was meant to apply to train transit as contrasted with switching operations is clear, not only from the essentially different character of the operations, but from the wording of the act itself." In the opinion is quoted cases from the other Federal courts.

It seems that this particular question has not yet come before the Supreme Court of the United States. This construction of the statute has been adopted by the Supreme Court of New Jersey in the case of *Farrell v. Penna. Ry.,* 93 Atl., 682. In the opinion the case of the *Erie Railroad Co. v. U. S.* is cited and approved, the Court saying: "It must suffice to say that the construction given by the Federal courts to the act

in question must, upon familiar principles applicable to Federal legislation, be controlling upon this Court in its construction and application of the act."

There is only one case in the Federal courts that has been cited as contrary to this view, and that is the case of *Atchison Ry. Co. v. U. S.*, 198 Fed. Rep., 637. Upon an examination it will be found that the case is easily distinguished from the *Erie case* and is not an authority adverse to that decision. In the *Atchison case* it appeared that the trains on that system, engaged in interstate traffic, were stopped before reaching Chicago, at Corwith, an outer Chicago yard. The train in question was destined to the Atchison inner yard at Eighteenth Street, about 8 miles distant. At Corwith the regular train crew was relieved by the switching crew, who ran the train on to its destination. In that case it was held that the section of the act was not limited to road trains, but applied to interstate trains destined to a particular railroad yard, although before terminating the trip and reaching the destination they were operated a part of the way by a switching crew. An examination of that case discloses that it does not at all conflict with the other cases decided by the Federal courts construing the "Safety Appliance Act."

Since the above was written we have received copies of the opinions of the Supreme Court of the United States (just handed down) in the cases of *U. S v. Erie R. R. Co.* and *U S. v. C. B. and Q. Ry. Co.*, dealing with the very question at issue in this case.

In the former case the decision of the Circuit Court of Appeals of Third Circuit is reviewed and reversed, upon the ground that upon the undisputed facts the operations were not switching operations, but those of trains in transit from Jersey City to Weehawken, Bergen, and other points around New York Harbor. Nevertheless, in construing the statute the Court says: "It will be perceived that the air-brake provision deals with running a train, while the other requirements relate to hauling or using a car. In one a train is the unit and in the other a car. As the context shows, a train in the sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road. When a train is thus made up and is proceeding on its journey, it is within the operation of the air-brake provision. But it is otherwise with the various movements in railroad yards whereby cars are assembled and coupled into outgoing trains and whereby incoming trains which have completed their run are broken up. These are not train movements, but mere switching operations, and are not within the air-brake provision. The other provisions calling for automatic couplers and grab-irons are of broader application, and embrace switching operations as well as train movements, for both involve a hauling or using of cars."

In the case at bar there is no question as to the character of the operations. The plaintiff was not injured while assisting in conducting a train from one place to another on the line, but he was injured in switching operations, pure and simple, upon the local Asheville switching yards.

No error.